**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

SAMUEL S. CANN,                    :
                                   :
            Petitioner,            :
                                   :        Civ. No. 02- 1779(DRD)
      -against-                    :
                                   :
ROY HENDRICKS, ET AL.,             :
                                   :        **O P I N I O N**
                                   :
            Respondents.           :
_____  :

Samuel S. Cann
PO - 861
New Jersey State Prison
Trenton New Jersey 08625
            Petitioner Pro se

Donald C. Campolo
Assistant Attorney General
Acting Essex County Prosecutor
Essex County Courts Building
Newark, New Jersey 07102
            Attorney for Respondents


**DEBEVOISE, Senior District Judge**

Petitioner, Samuel Cann, serving a life sentence of imprisonment with a 50 year parole

ineligibility, filed a petition for a writ of habeas corpus.

## I. Background

_____The events which form the basis of the charges against petitioner were developed at trial and

described in an opinion on post conviction review, State v. Cann, 342 N.J. Super. 93, 97-8 (App.

Div. 2001), as follows:

> M.T. [Marianne Torsiello] lived with her husband and children in Bloomfield. On September 27, 1986, she rode with a friend to Newark in order to purchase drugs. She had just finished a drug detoxification program. She left the car looking for a drug seller. Her friend saw police activity in the area and drove away, leaving M.T. on the Street.
>
> Shortly thereafter, M.T. met Pedro Flores. While they were walking together, they were accosted by [Petitioner], along with [Eugene] Pickney and [Rodney] Lance. They demanded money and drugs. They forced M.T. and Flores into a car at gunpoint, and grabbed M.T.'s pocketbook. The two were then taken to a backyard and, at gun point, the three assailants took turns raping M.T., both vaginally and orally. Thereafter, the victims were forcefully taken to an empty lot where all three men again sexually assaulted M.T. From there, the abductors took Flores and M.T. around the corner to a playground, where they again sexually assault M.T. In addition, they forced Flores to have sex with her. Lance then placed a jacket on Flores' head and shot and killed him. Lance also shot M.T., who had placed her hands to the back of her head to protect herself. When the gun went off, the bullet went through M.T.'s finger and lodged in her skull. The three assailants left M.T. unconscious, believing she was dead.

## II. Procedural History

An Essex County grand jury indicted petitioner, along with Rodney Lance and Eugene Pickney. On November 30, 1990, the Honorable Paul T. Murphy, granted the State's motion to sever the charges so that the defendants could be tried separately. On March 26, 1992, after a trial before the Honorable R. Benjamin Cohen, a jury found Lance not guilty on all charges. (Trial Tr. vol. 1, 9, Oct. 6, 1992.) On January 16, 1992, Pickney pled guilty to aggravated manslaughter and other charges. On October 26, 1992, Judge Cohen sentenced him to 15-years imprisonment with a seven and one-half years parole disqualifier. (Trial Tr. vol. 2, 222, Oct. 7, 1992; Trial Tr. vol. 3, 14, Oct. 8, 1992.)

Between October 6 through 19, 1992, Petitioner was tried before the Honorable Eugene J.

2

Codey, Jr.  At trial Petitioner was represented by John Dell'Italia, a private attorney appointed by the Office of the Public Defender.  Petitioner pled not guilty but was found guilty on all counts on which he was charged[1]; first-degree murder of Pedro Flores, N.J.S.A. 2C: 11-3(a)(1) and (2) (count two); first-degree felony murder of Pedro Flores, N.J.S.A. 2C:11-3(a) (count three); first-degree kidnaping of Pedro Flores, N.J.S.A. 2C:13-1(b)(1) (count four); first-degree robbery of Pedro Flores, N.J.S.A. 2C:15-1 (count five); second-degree attempted murder of M.T., N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count six)[2]; first-degree aggravated sexual assault on M.T., N.J.S.A. 2C:14-2(a) (count seven); first-degree kidnapping of M.T., N.J.S.A. 2C:13-1(b)(1) (count eight); first-degree robbery of M.T., N.J.S.A. 2C:15-1 (count nine); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count ten), and second-degree possession of a certain weapon, a handgun, with the purpose to use it unlawfully against the person of another, N.J.S.A. 2C:39-4(a) (count eleven).

On January 12, 1993, a motion for a new trial was heard.  Judge Codey denied the motion and amended Count six, attempted murder, to reflect that it was a second degree offense. (Sentencing Tr. 3, Jan. 12, 1993.)  Subsequently Judge Codey sentenced Petitioner to life imprisonment with a thirty-year period of parole ineligibility on count two, a consecutive term of twenty years with a ten-year period of parole ineligibility on count four, the kidnapping of Pedro Flores, and an additional consecutive twenty-year term of imprisonment with ten years of parole ineligibility on count seven, the aggregated sexual assault of M.T.  All other sentences were imposed to run concurrently.  In addition, the felony murder conviction was merged into the conviction of

---

[1] Count one charged co-defendant Lance with first-degree murder by purposely or knowingly murdering Pedro Flores by his own conduct, N.J.S.A. SC:11-3(a)(1) and (2).

[2] In the indictment, which charged all three defendants, Count six was first degree attempted murder, in violation of 2C:11-3 and 2C:5-1.  It was later amended to second degree.

murder, and the conviction for possession of a weapon for a unlawful purpose was merged into counts four, five, seven, eight, and nine. Appropriate monetary penalties were also imposed.

Petitioner appealed his conviction and sentence to the Appellate Division of the Superior Court of New Jersey. On appeal counsel was assigned by the State. Assistant Deputy Public Defender James K. Smith Jr. filed an appellate brief. On direct appeal Petitioner raised the following issues: First, Petitioner argued that the trial court erred by failing to explain to the jurors that an accomplice who has a lesser mental state can be convicted of a lesser degree of crime than the principal.[3] He also argued that this incorrect accomplice charge denied Petitioner a fair trial and violated his constitutional right to due process of law, U.S. Const., amend. XIV; N.J. Const. of 1947, art. I, 1. Petitioner argued, "when an alleged accomplice is charged with a different degree offense than the principal or lesser included offenses are submitted to the jury, the court has an obligation to 'carefully impart[] to the jury the distinctions between the specific intent required for the grades of the offense.'" State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993) (quoting State v. Weeks, 107 N.J. 396, 410 (1987)). Because Petitioner had no opportunity to be convicted of a lesser offense, he argued, his convictions for murder and felony murder must be reversed and a new trial ordered.

Second, Petitioner claimed that his right to a fair trial and due process of law were denied when the prosecutor claimed in summation that Ms. Torsiello had testified that a photograph of Petitioner "looked like the smallest individual involved," when in fact she had never identified any

---

[3] The court told the jury that "it doesn't make a difference who had the gun" because "they're all in it together," and that if "one's guilty, they're all guilty."

photograph of Petitioner.[4]  The prosecutor argued in his summation that an identification had been
made:

> after this incident, she gives some descriptions initially to Bloomfield
> [police].  And she indicates that she can only identify  the smallest one. . . .
> [s]he subsequently looked at some photo arrays provided by East Orange on
> the basis of the abduction happened in East Orange.  She indicated on photo
> array number A that number 7 looked like the smallest individual involved,
> a photograph of Samuel Cann (Trial Tr. vol. 8, 34, Oct. 16, 1992.)

Defense counsel immediately objected, arguing that:

> This is not the testimony of Mrs. Torsiello. The testimony of Mrs. Torsiello was that
> she noted him to be a young individual in that photo array.  She did not say it looks
> like the individual. That was – what was allegedly in the report [of] Detective
> Cocchi.  I object to the mischaracterization of any testimony.  (Trial Tr. vol. 8, 35.)

The trial court responded, "[t]hat's your recollection, Mr. Dell'Italia [defense counsel]," and
then told the jurors:

> Folks, it's your recollection of the evidence that controls.  If you recall Mrs.
> Torsiello testifies the way the Prosecutor said; give it whatever weight you feel
> it is due. (Trial Tr. vol. 8, 35.)

The trial court again advised the jurors in its jury instructions that:

> It's your recollection that controls.  If you don't recall Ms. Torsiello saying
> what Mr. Taylor thought she said and you agree with what Mr. Dell'Italia said,
> you can factor that in as one more piece in the puzzle for helping decide this

---

[4]  About a week after Ms. Forsiello's release from the hospital, Detective Cocchi of the
East Orange Police Department showed her three folders of photographs.  (Trial Tr. vol. 3, 195-
98.)  Several years later, on March 19, 1990, Investigator DeFrancisci and Detective Conte
showed her additional arrays of photographs.  (Trial Tr. vol. 3, 200; Trial Tr. vol. 6, 62, Oct. 14,
1992; Trial Tr. vol. 7, 95, Oct. 15, 1992.)  None of these photograph arrays contained a
photograph of Petitioner.  It was not until after Pickney had given a prosecutor a statement that
Petitioner had been involved in the offense that Ms. Torsiello was shown another array of
photographs with Petitioner's photograph.  (Trial Tr. vol. 7, 54, 88.)  However, she was not able
to make any identification.  (Trial Tr. vol. 7, 54.)

case.  It's your recollection that controls.  (Trial Tr. vol. 8, 52.)

Petitioner argued that there was absolutely no evidence that Ms. Torsiello had identified Petitioner in any manner at any time.  Petitioner argued that the absence of a meaningful corrective instruction from the trial court deprived Petitioner of a fair trial and Petitioner's conviction must be reversed and a new trial ordered.

Third, Petitioner argued that the trial court violated the rule of <u>State v. Trent</u>, 79 N.J. 251 (1979),[5] when, after substituting a juror[6] and telling the jury to begin deliberating anew, it did not send them back to recommence their deliberations, but instead answered questions asked by the jury prior to the substitution.  After telling the reconstituted jury to set aside its previous deliberations, the court proceeded to respond to the questions previously asked by the former jury.  Petitioner argued that it was clear that the jury had in fact continued its prior deliberations, and that the instruction to begin deliberations anew had been a meaningless gesture.  This failure to allow the newly constituted jury to recommence its deliberations, Petitioner further argued, was plain error warranting reversal.

Fourth, Petitioner argued that the trial court violated the guidelines of the code and the rules

---

[5] The Supreme Court found that it was "manifestly incorrect" for the trial court, after substituting a juror during deliberations, to instruct the replacement juror to "go into the jury room and continue with deliberations with the jury." To protect "fundamental right of fair and impartial jury deliberations," "the jury must be instructed in clear and unequivocal terms that it is to begin its deliberations anew. . ." <u>Id</u>. at 254-57.

[6] The jury foreperson, Ms. Arnoud, asked to be excused, because she had "a severe case of nausea and laryngitis." (Def's App. 33; Trial Tr. vol. 9, 3, Oct. 9, 1992.)  Defense counsel and the prosecutor did not object, and the court excused Ms. Arnoud, and selected a replacement, Ms. Fuoles, to be Juror No. 1. (Trial Tr. vol. 9, 3-5.)

of <u>State v. Yarbough</u>, 100 N.J. 627 (1985),[7] in sentencing Petitioner to three consecutive maximum sentences.[8]   Petitioner argued that the court erred in finding that the case was "extreme and extraordinary" to fall within the exception to <u>Yarbough</u> guideline (6).  He argued that imposing a third consecutive term for the kidnapping of Pedro Flores when that kidnapping was not predominantly independent of his murder was a violation of the principles of <u>Yarbough</u>.

On March, 6, 1996, the judgement of conviction was affirmed, with the exception of the conviction on count two for purposeful or knowing murder.  With the exception of the contention that the trial court erred because of defects in the charge regarding accomplice liability, the Appellate Division found his contentions without merit.  In its opinion the Court only discussed the defects in the accomplice liability charge.  The Court found that there was a  defect in the charge since it blurred the distinction between culpability as an actual perpetrator of the offense and culpability as

---

[7] In <u>State v. Yarbough</u>, the Supreme Court set forth a number of standards for determining whether sentences should be consecutive or concurrent.  One of those factors, Guideline (6), reads as follows:

> [t]here should be an overall limit on the cumulation of consecutive sentences for multile offenses not to exceed the sum of the longest terms (including an extended term eligible) that could be imposed for the two most serious offenses.

<u>Id.</u> at 644.

[8] The Court sentenced Petitioner to life imprisonment with a 30 year parole disqualifier on Count Two, purposeful or knowing murder, to run consecutively to "any and all sentences presently being served" (Sentencing Tr. 33-34; Def. App. 17.)  On Count Seven, aggravated sexual assault of Maryann Torsiello, the court imposed a consecutive term of 20 years with a 10 year parole disqualifier (Sentencing Tr. 34; Def. App. 17).  On Count four, kidnapping of Pedro Flores, the court imposed another 20 year term with a 10 year parole disqualifier, "consecutive to all other sentences presently being served" (Sentencing Tr. 34.)  Concurrent terms were imposed on the remaining counts which did not merge (Def.  App. 17.)  The aggregate sentence was life imprisonment with a 50 year parole disqualifier, consecutive to the sentence Petitioner was serving.

an accomplice.  Even though the State's theory was that Petitioner was guilty as an accomplice of Lance, the actual killer, the trial judge instructed the jury that Petitioner could be found guilty either as an accomplice or a principal.  The court also found a more critical flaw in the charge, which was the failure to explain to the jury that "each [offender] may participate in the criminal act with a different intent."  The trial judge did not inform the jury that the principal actor could be guilty of murder and Petitioner guilty of aggravated manslaughter or reckless manslaughter as an accomplice, State v. Bielkiewicz, 267 N.J. Super. at 531.  Nor did he inform them what facts could lead to finding the principal guilty of murder and the accomplice guilty of a lesser offense,  Id. at 533. Following Bielkiewicz[9], which amended the model charges on accomplice liability, the court found the trial judge's charges deficient.  Due to those defects, the conviction for murder was reversed and remanded for a re-trial.  The Appellate Division gave the State the option to unmerge the felony murder conviction from the purposely knowing conviction rather than do a re-trial.  Other issues raised by Petitioner in his brief were not discussed in the opinion.

On remand, the State elected not to retry the purposeful or knowing murder count. Accordingly, on March 28, 1996, the trial judge unmerged the felony murder conviction and sentenced Petitioner on that count to life imprisonment with thirty years to be served without parole. The judge then imposed the same sentences previously imposed.  Accordingly, Petitioner's aggregate

---

[9] In Bielkiewicz, the trial court relied upon the October 17, 1988 Model Charge in charging the jury on accomplice liability.  The same one was used in the present case.  While that instruction correctly told the jurors that an accomplice must have "'the purpose to promote or facilitate the crime of purposeful or knowing murder,'" the court found that it was inadequate in that it failed to advise the jurors that the accomplice could be found guilty of a lesser offense than that of the principal.  Likewise, a supplemental instruction given after a jury question was also found to be inadequate.  Despite trial counsel's failure to object, the instruction was held to constitute plain error. State v. Bielkiewicz, 267 N.J. Super. at 526-527, 533.

-8-

sentence was life in prison, plus twenty years, with fifty years of parole ineligibility.  The Petitioner

filed a petition for certification to the Supreme Court.  On June 28, 1996, the Supreme Court denied

Petitioner's petition for certification.  State v. Cann, 145 N.J. 375, (1996).

On November 7, 1997, Petitioner appealed to the Appellate Division of the New Jersey

Superior Court a second time.  James K. Smith, Jr., Assistant Deputy Public Defender, prepared the

brief for Petitioner.  On this second appeal, Petitioner raised the following issues.  First, Petitioner

argued that the Superior court did not previously consider whether the legal errors in the accomplice

charge would require that Petitioner's conviction for felony murder be vacated.  Since the prior

opinion only reversed the purposeful or knowing murder conviction, affirming the remaining counts,

and reinstated the felony murder conviction without expressing any opinion about the validity of that

conviction, Petitioner argued that he had the right to have the court determine the validity of that

conviction.

Second, the trial court's charge on accomplice liability denied Petitioner a fair trial on the

felony murder count because it failed to advise the jurors that an accomplice could be guilty of

different offenses than the principal, but instead told them that "if they were all in it together, one's

guilty, they're all guilty."   In its accomplice charge, the trial court did not advise the jury that

Petitioner could be an accomplice in some crimes, but not others; rather, the accomplice liability

instruction suggested to the jury that they were to determine if "Mr. Cann, Mr. Pickney and Mr.

Lance were acting together as accomplices of each other in this entire event . . . ." (Trial Tr. vol. 8,

48.)[10]   Petitioner argued that the trial court's failure to make clear that Petitioner could be an

_____

[10] The court stated that the jury was to determine whether defendant was an accomplice in
"the crimes:"

accomplice in the kidnapping and sexual assault, but not in the robbery served to deny Petitioner a fair trial on the felony murder count. Since Petitioner was an accomplice in "this incident," the jury must have concluded that it could convict him of felony murder, robbery, and all of the other crimes committed by Lance and Pickney. Petitioner argued that the jury instruction was highly prejudicial and required that Petitioner's conviction for felony murder be reversed and remanded for a new trial.

On November 10, 1997, the Appellate Division found the contentions to be without merit and affirmed Petitioner's conviction and sentence, stating:

> In light of the fact defendant previously argued that the erroneous instructions on accomplice liability required a reversal of the felony murder conviction as well as the purposeful or knowing conviction, we are satisfied that this issue was decided adversely to defendant when we authorized the trial court to unmerge the felony murder conviction, at the State's election. . . . The jury was properly instructed on the predicate felony of robbery and felony murder. . . . The jury was clearly and adequately instructed that, in order to be guilty as an accomplice to the crime of robbery, defendant must be found himself to possess the intent, which is the crime's basic element, at least indirectly participate in the commission of the criminal act, and act with the purpose of promoting or facilitating the commission of the crime of robbery which was the predicate felony. See State v. Bielkiewicz, 267 N.J. Super. 520 527-28 (App. Div. 1993). Viewing the disputed charge in the context of the overall charge, and not in isolation, particularly with respect to the counts of felony

_____

> not only is the person who actually commits the criminal act responsible for it but one who is legally accountable for the acts of another person is also responsible and punishable as if he committed the crime himself. A person is legally accountable for the conduct of another person if he is an accomplice of such other person or persons in the commission of the offenses. The State, therefore, has the burden of proving beyond a reasonable doubt that either the defendant, Mr. Cann committed these acts himself as a principal or that Rodney Lance and Eugene Pickney [sic passim] committed the crimes . . . and that Mr. Cann was the accomplice during the commissions of those crimes with Mr. Lance and Mr. Pickney. . . Therefore, in this situation the State must prove beyond a reasonable doubt that Rodney Lance and Eugene Pickney committed the crimes . . . and that Mr. Cann acted purposely to promote those crimes that are specified in the indictment. (Trial Tr. vol. 8, 46-47.)

-10-

> murder and robbery, reinforces our conclusion the error regarding the
> purposeful and knowing murder count had no effect on the jury's deliberations
> on the other counts of the indictment. See <u>State v. Wilbely</u>, 63 N.J. 420 (1973);
> <u>State v. Norman</u>, 151 N.J. 5, 38-39 (1997) (quoting <u>Cupp v. Naughten</u>, 414
> U.S. 141, 146-47, 94 S. Ct. 396, 400, 38 L.Ed. 2d 368, 372 (1973)).

On December 3, 1997, Petitioner filed a second petition for certification.  On February 2, 1998, the New Jersey Supreme Court denied the petition, <u>State v. Cann</u>, 153 N.J. 48 (1998).

On April 6, 1998, Petitioner filed a petition for post-conviction relief.  Petitioner claimed that the trial court erred in admitting prejudicial testimony and an inadmissible weapon into evidence and denied appellant a fair trial.  He also raised the issues of ineffective assistance of trial counsel and prosecutorial misconduct.  Concerning the first issue, Petitioner argued that there was no logical connection between the testimony offered pertaining to robbery that turned into a shooting at Georgia King Village earlier in the evening before this crime  occurred, or the weapon that co-defendant Lance was arrested for some four years before this case.  He argued that the court erred because it failed to instruct the jury that the "evidence is admitted solely to sustain the credibility of the witness, not as direct or corroborative evidence of the facts stated upon the stand by the witness" <u>State v. Kane</u>, 9 N.J. Super. 254, 263 (App. Div. 1950).  He argued that the court's error required a reversal of the convictions and that the court should grant him a new trial.

Second, Petitioner argued that he was denied effective assistance of counsel because defense counsel failed to make an attempt to suppress the prejudicial testimony and evidence, even though he was aware of the State's intention to present this evidence.

On June 11, 1999, the Superior Court denied Petitioner's post-conviction relief motion for procedural deficiencies.  First, the court held that Petitioner  failed to comply with the provisions of

N.J. Ct. R. 3:22-4,[11] and no exceptional circumstances which can overcome the procedural bar existed in this case.  Second, the court held that Rule 3:22-5 precludes Petitioner's attempt to raise the accomplice jury charge issue, which was previously decided by the Appellate Division.  The court further held that Petitioner's motion also must fail for lack of a meritorious claim.  It found that Petitioner failed to show how trial or appellate counsel's conduct prejudiced him within the meaning of the effective assistance of counsel standard.[12]  It also entered an order denying Petitioner's application for an evidentiary hearing.  (Pl.'s App. 6; Def.'s App. 51.)

Petitioner appealed this order to the Appellate Division of the Superior Court raising three issues; first, he argued that the trial court erred by failing to grant an evidentiary hearing on the issue

---

[11]  This provision provides that any ground for relief not raised in a prior proceeding under this rule or in the proceedings resulting in the conviction is barred unless the court finds that such relief could not previously  be asserted, that enforcement of the bar would result in fundamental injustice, or it would be unconstitutional. A finding of fundamental injustice is only warranted in exceptional circumstances. State v. Cerbo, 78 N.J. 595, 605 (1979).

[12]  The court found that

> [t]he claimed errors do not overcome the presumption that counsel's conduct was within the wide range of acceptable, reasonable professional assistance, nor do they demonstrate prejudice to defendant sufficient to undermine confidence in the outcome of the trial.  Defense and appellate counsel were conscientious and zealous in their presentation of the petitioner. The record does not support or even give rise to a fair inference that trial or appellate counsel's performance was in any way inadequate or below a level of reasonable competence.
> Finally, even assuming that trial counsel's performance could in some way be characterized as deficient which I do not find, his conduct was not so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction.  State v. Fritz, 105 N.J. (1987) see also Strickland v. Washington, 466 U.S. 668.
> In short, petitioner has failed to meet the heavy burden of proof that, but for his trial counsel's performance, the result would have been any different.

-12-

of ineffectiveness of trial counsel; second, the post-conviction relief judge erred in finding that petitioner's contention that he was denied the effective assistance of trial counsel was without merit; third, the conclusion of the post-conviction relief court that petitioner's grounds for relief were procedurally barred was in error.

On July 6, 2001, the Court affirmed the order, agreeing with the trial court that the petition was time-barred under N.J. Ct. R. 3:22-12. The Court recognized that the petition was filed only sixty days after it was time-barred, but it refused to relax the time-bar, finding that Petitioner failed to allege or establish excusable neglect and also that the claims set forth in the petition lacked potential merit. Notwithstanding the time-bar, the Court addressed the contention that trial counsel was ineffective in failing to request a DNA testing. The Court concluded that applications of this nature are not suited for post-conviction relief proceedings. Therefore, Petitioner must make an application to the trial court if he wished a DNA sample testing to prove ineffectiveness of the trial counsel. On October 23, 2001, the New Jersey Supreme Court denied petitioner's petition for certification.

### III. Claims Asserted in the Petition for Writ of Habeas Corpus

A. Ground One

Petitioner claims that

> THE TRIAL COURTS [sic] CHARGE ON ACCOMPLICE LIABILITY DENIED PETITIONER A FAIR TRIAL IN THAT IT FAILED TO ADVISE THE JURORS THAT AN ACCOMPLICE COULD BE GUILTY OF A LESSER OFFENSE THEN [sic] THE PRINCIPLE [sic], BUT INSTEAD TOLD THEM THAT "THEY ALL HAVE THE SAME CRIMINAL STATE OF MIND FOLKS," AND "THEY'RE ALL IN IT TOGETHER."

Petitioner first raised this issue in his direct appeal. On March 6, 1996, the Appellate Division of the Superior Court decided the issue on the merits holding that there was a defect in the

-13-

accomplice charge and the conviction for murder should be reversed and remanded.[13]  Petitioner raised this issue again on his second appeal, arguing that the incorrect accomplice charge denied Petitioner a fair trial, and violated his constitutional right to due process of law, U.S. Const., amend. XIV; N.J. Const. of 1947, art. I, 1.  Petitioner also argued that the defect on the accomplice charge required a reversal of the felony murder conviction as well.  On November 10, 1997, the court held that the accomplice charge issue, raised again by Petitioner in the second appeal, was without merit and affirmed Petitioner's conviction and sentence.

B. Ground Two

Petitioner claims that

THE PETITIONER WAS DENIED HIS RIGHT TO APPEAL WHEN, AFTER REVERSING HIS PURPOSEFUL OR KNOWING MURDER CONVICTION BECAUSE OF AN  INCORRECT JURY INSTRUCTION ON ACCOMPLICE LIABILITY, THE APPELLATE DIVISION HELD, WITHOUT ANY EXPLANATION, THAT THE TRIAL COURT COULD REINSTATE HIS CONVICTION FOR FELONY MURDER.

Petitioner raised this issue in his second appeal.  In its opinion on November, 10, 1997, the Appellate Division held that the contention was without merit.  The Court noted that this issue could not be reargued since the issue was previously decided on Petitioner's first appeal.  The Court explained that the "issue was [already] decided adversely to" Petitioner when the Court gave the State an option to unmerge the felony murder conviction in its opinion on the first appeal.

C. Ground Three

---

[13] Due to the defect, the conviction for murder was reversed and remanded for a re-trial. The Appellate Division gave the State the option to unmerge the felony murder conviction with the purposely knowing conviction, rather than do a re-trial. On remand, the State elected not to retry the purposeful or knowing murder count.  The trial judge unmerged the felony murder conviction and sentenced Petitioner on that count to life imprisonment with thirty years to be served without parole.

Petitioner claims that

THE ERRONEOUS JURY CHARGE ON ACCOMPLICE LIABILITY ALSO REQUIRED THAT PETITIONER'S CONVICTIONS ON THE REMAINING COUNTS BE REVERSED.

Petitioner raised the issue in both of his appeals.  The Appellate Division concluded that the claim was without merit holding that

[v]iewing the disputed charge [on accomplice liability] in the context of the overall charge, and not in isolation, . . . the error regarding the purposeful and knowing murder count had no effect on the jury's deliberations on the other counts of the indictment.

State v. Cann, No. A-4669-95T4, slip op. at 4 (N.J. Super. Ct. App. Div. Nov. 10, 1997).

D. Ground Four

Petitioner claims that

PETITIONER'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WAS DENIED WHEN THE PROSECUTOR CLAIMED IN SUMMATION THAT MS. TORSIELLO HAD TESTIFIED THAT A PHOTOGRAPH OF PETITIONER "LOOKED LIKE THE SMALLEST INDIVIDUAL INVOLVED," WHEN IN FACT SHE HAD NEVER IDENTIFIED ANY PICTURE OF MR. CANN.

Petitioner raised the issue in his first appeal.  The Appellate Division held that it was without merit.  The Court affirmed its decision without discussion  pursuant to N.J. Ct. R.2:11-3(e)(2).[14]

_____

[14](2)Criminal, Quasi-Criminal and Juvenile Appeals.

When in an appeal in a criminal, quasi-criminal or juvenile matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion, the court may affirm by specifying such arguments and quoting this rule and paragraph.

-15-

E. Ground Five

Petitioner claims that

THE TRIAL COURT ERRED IN ADMITTING PREJUDICIAL TESTIMONY AND AN INADMISSIBLE WEAPON INTO EVIDENCE AND DENIED PETITIONER A FAIR TRIAL.

Petitioner raised this issue in his petition for post-conviction relief and also in his appeal of denial of post-conviction relief. The Court denied Petitioner's motion for procedural deficiencies,[15] and it also concluded that the claim was without merit.

F. Ground Six

Petitioner claims that

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner first raised this issue in his post-conviction relief application. Even though this claim was time-barred pursuant to Rule 3:22-4, the court discussed this contention in detail and concluded that "the claimed errors do not overcome the presumption that counsel's conduct was within the wide range of acceptable, reasonable professional assistance, nor do they demonstrate prejudice to defendant sufficient to undermine confidence in the outcome of the trial." The court noted that record showed that Petitioner received "a rigorous, viable defense and appeal."

Petitioner, again, raised the issue of ineffective assistance of counsel in an appeal from denial of post-conviction relief. The Appellate Division held that the claim was time-barred and that it

N.J. Ct. R. 2:11-3(e)(2).

[15] The court noted that, even though "the petition was filed only sixty days after it was time-barred," it would not "relax the time-bar in light of [Petitioner]'s failure to allege or establish excusable neglect. . . ." State v. Cann, 342 N.J. Super. at 102.

lacked potential merit.  State v. Cann, 342 N.J. Super. at 102.

## IV. Standard of Review

In appraising the sufficiency of a complaint, the general rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957).  In the case of a pro se pleading, it is held "to less stringent standards than more formal pleadings prepared by attorneys." Haines v. Kerner, 404 U.S. 519, 521 (1972).

A habeas corpus petition, however, must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2 (c)).  Section 2254 states that federal courts can entertain an application for a writ of habeas corpus only where the inmate's custody violates federal law:

> . . . a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody  in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (2005).

Federal courts may entertain a habeas corpus application only where the petitioner has exhausted the remedies available to him or her in the state courts. McCandless v. Vaughan, 172 F.3d 255, 260 (3d Cir. 1999).  The requirement of exhaustion ensures that the state court had the opportunity to review a constitutional challenge to a state conviction. Wirts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).  Furthermore, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Additionally, the petitioner must fairly present each of his claims to the state courts. Id. at 844-45. To be fairly presented, the claim must has been reviewed "at all levels of state court adjudication". Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002). "Federal courts will dismiss without prejudice claims which have not been properly presented to the state courts allowing petitioners to exhaust their claims." Lines v. Larkins, 208 F.3d 153, 159-60 (3d Cir. 2000). Where a petition is mixed with exhausted and unexhausted claims, it will be dismissed without prejudice, Rose v. Lundy, 455 U.S. 509 (1982), or stayed if the petitioner would be time barred from refiling after exhaustion. However, if state procedural rules bar the petitioner from seeking further relief, the exhaustion requirement is satisfied. Id. at 160. These claims, however, are considered procedurally defaulted. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). Habeas review is not available where a petitioner has procedurally defaulted "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief on any claim adjudicated on the merits in state court is precluded unless the adjudication resulted in a decision "that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C.§ 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted the

"contrary to" clause in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts.

Williams, 529 U.S. 412-13.

The Supreme Court in Williams further interpreted the "unreasonable application" clause in 28 U.S.C. §2254(d)(2) as follows:

> Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

The Supreme Court in Williams further explains 'unreasonable application' as follows:

> [A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable.

Id. at 409. (emphasis added).

The "clearly established federal law, as determined by the Supreme Court of the United States" means "the holdings of the Court's decision. . . as of the time of the relevant state-court decision," as opposed to dicta. Id. at 412.

## V.  **Discussion**

Petitioner's six grounds must be examined in the light of these standards of review.

A. Accomplice Charge: Petitioner's first three grounds concern the faulty accomplice charge that the trial court gave to the jury. Ground one is that the court's charge was in error in that it failed to inform the jury that an accomplice could be guilty of a lesser offense than that of the principal and

-19-

instead told the jury that all the defendants had the same state of mind.  Ground two is that Petitioner was denied the right to appeal because, when reversing his purposeful or knowing conviction based on the accomplice charge, the Appellate Division did not give an explanation of why the trial court could unmerge the felony merger conviction from the purposely knowing conviction.  Ground three is that invalidation of the accomplice liability charge required that petitioner's convictions on all the other counts be reversed.

On the first appeal the Appellate Division found that the accomplice charge was flawed but held that the jury was properly charged on the predicate offense of robbery and felony murder.  There was ample evidence to support the felony murder count.  "[T]here is no specific culpability requirement for the homicide; the actor need only have met the culpability requirement of the underlying felony."  Cannel, Criminal Code Annotated, Comment 3 N.J.S.A. 2C:11-3 (Gann. 2005).  In the present case there was more than sufficient evidence to support a finding that petitioner and his companions intended to rob Flores and Ms. Torsiello and that Ms. Torsiello was raped repeatedly.  The homicide took place during the course of these actions.

The erroneous accomplice jury charge creates no federal rights because the Appellate Division set aside the conviction that might have been based on that charge.  The first Appellate Division opinion, at least by implication, held that the erroneous accomplice charge had no prejudicial effect which precluded sustaining the conviction on the felony murder charge.  Otherwise it would not have permitted the trial court to proceed with sentencing on the felony murder charge. As the second Appellate Division opinion stated:

> In light of the fact defendant previously argued that the erroneous instructions on accomplice liability required a reversal of the felony murder conviction as well as the purposeful or knowing conviction, we are satisfied that this issue was decided adversely to defendant when we authorized the trial court to unmerge the felony

> murder conviction, at the State's election.  Since this issue was previously decided, it may not be reargued here.  Khoudary v. Salem County Bd., 281 N.J. Super. 571 (App. Div. 1995).  Pursuant to R. 2:11-3(e) (2), an affirmance without an opinion is a disposition that bars further argument before us of the same issues we previously decided.

State v. Cann, No. A-4669-95 T4, slip op. at 3.

The Appellate Division further stated that the error regarding the purposeful and knowing murder count had no effect on the jury's deliberations on the other counts of the indictment.  This finding was not an unreasonable determination of the facts in light of evidence presented in the state court proceeding.

Granting that the accomplice jury instruction was erroneous, a circumstance the state courts have acknowledged and dealt with, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."  Duncan v. Morton, 256 F.3d 189 (3d Cir. 2001).  In a habeas case the court must consider "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process . . . not merely whether the instruction is undesirable, erroneous or even universally condemned."  Henderson v. Kibbs, 431 U.S. 145, 154 (1977).  In the present case the state court addressed and remedied any ill effects of the erroneous instruction, and nothing suggests that the state courts' conclusion that there was no prejudicial effect on the remaining counts was unfounded.

Thus grounds one, two and three of the petition do not set forth a basis of habeas relief.

B.  Prosecutorial Error: In his closing argument the prosecutor mistakenly stated that Ms. Torsiello had testified that a photograph of Petitioner "looked like the smallest individual involved," when in fact she had not identified any photograph of Petitioner.  Defense counsel objected and the trial court informed the jury that it would have to rely on its recollection of the testimony.  Without

-21-

discussion the first Appellate Division opinion found this ground of appeal to be without merit.

In the light of the lengthy trial, the comprehensive closing argument, the fleeting nature of the remark and the trial judge's admonition to the jury after defense counsel objected to the statement that "it's your recollection of the evidence that controls. If you recall Mrs. Torsiello testifies (sic) the way the Prosecutor said, give it whatever weight you feel it is due," the state court reasonably held that Petitioner's appeal on this ground was without merit. For habeas purposes a prosecutor's comments must have created the demonstrable reality of fundamental unfairness. Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974). This isolated remark of the prosecutor did not create a demonstrable reality of fundamental unfairness.

C. Admission of Evidence and Ineffective Assistance of Counsel: Petitioner's grounds five and six are related. Ground five is that it was prejudicial to admit testimony concerning a robbery that turned into a shooting at Georgia King Village and testimony concerning accounts of drug use by Lance, Pickney and other individuals present on the corner of Sussex Avenue at a time preceding the commission of the crime. Petitioner asserts it was also prejudicial to admit the weapon that Lance had been arrested for some years before the instant case was presented to the grand jury. Ground six is that counsel was ineffective for failing to move to suppress this evidence and for failing to present other evidence favorable to Petitioner. These claims were first presented in Petitioner's April 6, 1988 post-conviction relief application.

The court held that Petitioner was procedurally barred under N.J. Ct. R. 3:22-4 for failure to raise his claims in a prior proceeding, and no exceptional circumstances that can overcome the procedural bar had been advanced. Further the court held that Petitioner failed to advance a meritorious ineffective assistance of counsel claim. Applying the principles set forth in Strickland

v. Washington, 466 U.S. 668 (1984),  it held that Petitioner failed to show how trial or appellate counsel's conduct prejudiced him.   The Appellate Division concurred that Petitioner was procedurally barred, finding that he was time barred by virtue of the provisions of N.J. Ct. R. 3:22-12.   Apart from their lack of merit, it is apparent that the state courts denied Petitioner's post-conviction relief application on procedural grounds - N.J. Ct. R. 3:22-12 (Petitioner failed to file his application for post-conviction relief within the five year statute of limitations) and N.J. Ct. R. 3:22-4 (Any ground for relief not raised in a prior proceeding is barred unless the court finds that such relief could not previously be asserted, that enforcement of the bar would result in fundamental injustice, or it would be unconstitutional).

These grounds for relief have been procedurally defaulted under state law.   In these circumstances habeas review is not available "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."   Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Petitioner can make neither such showing here.   In the first place he has not shown any compelling reason why he did not comply with New Jersey's procedural requirements.   Further, he has not been prejudiced in that he has not advanced in his grounds five and six circumstances that had the state court considered them, would have provided a basis for habeas relief.

The testimony and the weapon which were admitted in evidence were relevant and tied to the crimes that were the subject of this case.   It would have been futile for defense counsel to have objected to their admission.

Petitioner speculates that had counsel called a variety of witnesses the outcome of his trial

would have been different.  He sets forth in his petition an array of bits and pieces of testimony from the Rodney Lance trial and statements various persons in the community are alleged to have made. It is impossible to decipher what it is that he expects his trial counsel should have done with this material.  The trial transcript discloses that counsel conducted a vigorous defense in the face of compelling evidence of guilt and that he pursued an effective appeal that resulted in a reversal of the knowing murder count.

Even if Petitioner could overcome the barrier created by his procedural default under state law, he could not show, as the state courts alternatively found, that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## VI.  <u>Conclusion</u>

For the reasons set forth above the petition for the issuance of a writ of <u>habeas corpus</u> will be denied without issuance of a certificate of appealability.  The court will file an appropriate order.

Dated: December 7, 2005                             /s/ Dickinson R. Debevoise
                                                   DICKINSON R. DEBEVOISE
                                                   U.S.S.D.J.